21 N.J. Super. 556 (1952)
91 A.2d 492
LAURINO COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DALY BUILDING CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1952.
Decided October 3, 1952.
*560 Before Judges FREUND, STANTON and CONLON.
Mr. Sidney Alpern argued the cause for the appellant.
Mr. M.A. Potter argued the cause for the respondent. (Messrs. Potter and Fisher, attorneys for plaintiff-respondent).
The opinion of the court was delivered by STANTON, J.S.C.
The appellant seeks the reversal of a judgment entered in the County Court, because of error in the admission and exclusion of evidence and in the refusal to charge certain requests to the jury; and because of judicial *561 indiscretion in the supervision of the trial which prejudicially affected the appellant.
The respondent's action is for the recovery of the balance due for certain work done for and materials furnished to the appellant. The claim may be divided into three parts. The first is based on an admitted oral agreement between the parties made in July 1950 for the extension of a street through property of the appellant by filling the area to a certain level and supplying a gravel surface, for the sum of $1,200. It is conceded that this contract was only partially performed. The fill work was completed but the surfacing was not done. The second part of the claim is based on an oral agreement allegedly made in October, 1950, whereby the appellant was to pay $3,200 for filling and rough grading the area surrounding 26 newly constructed houses. The appellant denies that there was such an agreement and contends that the respondent undertook to do this work for Clarence A. Pullen. It is admitted that there is a written contract dated July 3, 1950 between the appellant and Pullen whereby the latter was to erect the houses, and among other things do the filling and grading about them; this contract was filed in the office of the county clerk on July 17, 1950. The remaining item of the claim is for bulldozer service and fill supplied by the respondent to the appellant for which the sum of $203.10 is sought. On November 27, 1950, the appellant paid the respondent $1,500, but there is a dispute between the parties as to the nature and purpose of this payment.
In the course of the performance of his contract, Pullen was adjudicated a bankrupt and he abandoned the work in the first week of January 1951. There is proof that the respondent's failure to complete the street improvement was due to the failure of Pullen to complete his contract and it is conceded by the respondent that there should be an allowance of $420. Thus its claim on that item was reduced to $780. It is admitted also that on the contract for filling and rough grading about the houses, there should be a credit of *562 $70 to the appellant, leaving a balance of $3,130. The balance claimed at the trial was $2,613.10, and the jury returned a verdict in favor of the respondent for that amount.
Harry A. Lieblich, president of the appellant company, testified that in the fall of 1950 he assisted the respondent and Pullen in negotiating an agreement whereby the former was to do the filling and grading work about the houses for Pullen; that the $1,500 payment was made by the appellant to Laurino at the request of and for the account of Pullen; that after the failure of Pullen, no work was done on the development for several months; that early in March he made an agreement with the respondent whereby it was to complete the street work and the grading and filling about the houses for the sum of $1,700, but that it failed to perform any of the work, and that the appellant was required to do it, at a total cost of $3,220.
Robert Laurino, president of the respondent corporation, testified that it never had any contract with Pullen and that the contract with the appellant for filling and grading about the houses was made in October 1950. He denied the making of any agreement with the appellant in the spring of 1951. He admitted that on April 17, 1951 there was filed by his company in the county clerk's office a mechanic's notice of intention in connection with the premises of the appellant. He explained that he placed it on record at that late date because the road was not complete, there was grading to be done, there was a balance due him, and promises of payment had not been kept.
Pullen testified that he had no contract with the respondent for the work in question and that he did not ask Lieblich to assist him in negotiating one with Laurino; that he had a dispute with the appellant about the grading and filling because there was more of it to be done than appeared in the contract, plans and specifications; and that he did not authorize the appellant to pay the sum of $1,500 to the respondent on his account.
*563 It was for the jury to determine what the agreements between the parties were, what work had been performed and what if anything was due to the respondent; also whether there was a contract between the respondent and Pullen for filling and grading, and if there were then the verdict would have to be against the respondent with respect to its claim for that work.
The appellant argues that there was error in the admission into evidence of a bill dated November 10, 1950, from the respondent to the appellant in which the following matters are set forth:

"Re-6th Avenue Project Long Branch price as agreed to
 Road Labor & Material with 6" Compact Road Gravel .......... $1200.00
Rough Grading at New Homes Bulldozer Service and Supplying
 Necessary Fill  Price as agreed ........................... $3200.00
 ________
 Total ................................................. $4400.00
 1500.00
 ________
 $2900.00
Approximate percentage of job completed 75% 
A payment on account will be greatly appreciated"

It was objected and it is argued now that this is self-serving evidence. The introduction of such a bill with nothing more would be error and a transgression of the self-serving evidence rule. However, Laurino testified that the bill was sent to the appellant in due course; its receipt was not denied but Lieblich testified that he did not remember if he had received it. Further, there was the payment of $1,500 by the appellant's check to the respondent on November 27, 1950. There is no explanation on the check of the purpose for which it was given, and there was no accompanying letter or statement of such purpose. There is the testimony of Lieblich that it was made on account of Pullen's obligation to the respondent at his request. The receipt of the bill through the mail is presumed. Payment of the check under the circumstances shown is evidence from which it might be inferred that the appellant acted upon the bill. The receipt *564 of the bill under these circumstances was not error. State v. MacFarland, 83 N.J.L. 474 (E. & A. 1912); New York Central R.R. Co. v. Petrozzo, 92 N.J.L. 425 (E. & A. 1918); Zakutynski v. Livese, 6 N.J. Misc. 448 (Sup. Ct. 1928), affirmed 105 N.J.L. 499 (E. & A. 1929).
Under Point 2 the appellant contends the trial court erred in permitting Laurino to answer the following questions:
"Did you give the Daly Building Corporation credit for this check?"
"Mr. Alpern has marked in evidence a notice of intention which he says was filed on April 17, 1951. Will you tell us why you filed the notice of intention at that time?"
The propriety of these two questions is not argued. In the brief this point is combined with Point 1 discussed above and the entire argument is addressed to self-serving writings. It is merely asserted that both questions are self-serving declarations. It is well settled that a matter not discussed upon the argument or in the brief need not be considered. Marten v. Brown, 81 N.J.L. 599 (E. & A. 1911). However, it is apparent on the face of the questions that there is no merit to the appellant's contention.
It is next argued that the court improperly limited the appellant in the cross-examination of Pullen called by the respondent on rebuttal. The appellant sought to inquire regarding payments which may have been made by the appellant to certain subcontractors of Pullen for the latter's account. This was clearly immaterial and irrelevant to the issue between the parties to this action. It is argued that these questions were designed to establish a course of conduct between the appellant and the witness relating to the issuance of checks by it in payment of his obligations to certain of his subcontractors, and further to attack his credibility and show bias and prejudice. But what the examiner sought to do was to inquire into collateral matters which have no bearing on the issue between the present parties. There may be cross-examination on these to test credibility but subject always *565 to the general discretion of the trial court to limit cross-examination. Proof of Pullen's dealings with his subcontractors would not tend to establish that the Laurino Company also was his subcontractor. It is doubtful that the credibility of the witness would be affected by any answer he might make to questions along that line. His direct testimony merely was that he did not authorize the appellant to pay $1,500 to the respondent on his account. A pursuit of the proposed examination would only bring in collateral matters which might tend to confuse the jury in its consideration of the issue. Wigmore on Evidence, sec. 1006. Quellmalz v. Atlantic Coast Elect. Ry. Co., 94 N.J.L. 474 (E. & A. 1920); State v. Snover, 101 N.J.L. 543 (E. & A. 1925); Semento v. Recca, 3 N.J. Misc. 1210 (Sup. Ct. 1925); Kiernan v. Mauer, 13 N.J. Super. 18 (App. Div. 1951). There was clearly no abuse of discretion by the trial court in limiting the cross-examination at this point.
The appellant argues that the court erroneously restricted the examination of Lieblich on the payment of $1,500 to the respondent. The court permitted the witness to testify that he made such payment upon the request and authorization of Pullen, but it sustained an objection when it was sought to show what the entire conversation was between Pullen and the witness. Any such conversation would be purely hearsay and was properly excluded.
The first request to charge quoted R.S. 2:60-115 regarding the filing of a building contract and discussed what the effect of the same would be between an owner and a subcontractor. The second request contained an extract from R.S. 2:60-107 regarding property to which and services for which a mechanic's lien may attach; an extract from R.S. 2:60-112 regarding the filing of a mechanic's notice of intention; and the quotation of R.S. 2:60-113 regarding the contents of a mechanic's notice of intention. The fourth request was to the effect that the filing of the contract was notice to the world of its contents. These requests are clearly not pertinent to the issue. The respondent was not claiming *566 a mechanic's lien on appellant's lands. It was seeking a recovery against the appellant on its direct contract with it and not by reason of any contract that it may have had with Pullen.
The third request is as follows:
"3. If from the evidence you find that plaintiff Laurino Company, Inc. was a subcontractor of Clarence A. Pullen, the general contractor, your verdict must be in favor of the defendant for all claims made by the plaintiff respecting the fill and rough grading on the Atlantic and Sixth Avenues development."
This request was charged in substance by the trial court. In Plant v. River Road Service Co., 5 N.J. Super. 290, 294 (App. Div. 1949), it was said:
"It is sufficient if the court instructs the jury in such a manner as to give the party the benefit of all the applicable principles and rules of law contained in his several requests. The court is not bound to charge the jury in so many words the requests of counsel, but must charge the requests in substance. Youngs v. Sunderland, 15 N.J.L. 32 (Sup. Ct. 1835); State v. Rombolo, 91 N.J.L. 560 (E. & A. 1917)."
The fifth request is as follows:
"a. I further charge you that as a matter of law Clarence A. Pullen, general contractor, was legally required to furnish the material and labor for the filling and rough grading of the development at Atlantic and Sixth Avenues, Long Branch, N.J.
b. Before you can find the defendant liable for the claim of filling and rough grading to the Atlantic and Sixth Avenues development, you must find that defendant and Pullen legally and mutually agreed to modify or abandon that part of the specifications and plans attached to the said filed building contract after the filing thereof.
c. The mere fact that the general contractor, who was required to perform said labor and furnish said material for the fill and rough grading, did not perform the same or furnish such materials personally does not constitute at law such modification or abandonment."
This is not a correct statement of the law. The appellant might in fact engage the respondent to do work which Pullen previously had agreed to perform regardless of whether or not the appellant and Pullen had agreed to abandon or *567 modify their contract. If there is a contract between the appellant and the respondent and the latter performed, it would be entitled to recover.
The sixth request is as follows:
"I further charge you that under the evidence in this case if you find therefrom that plaintiff filed its notice of intention to perform work or furnish materials for Daly Building Corp. as a result of a contract made between the parties hereto shortly prior thereto for the completion of the fill and rough grading to said development, then you must find as a matter of law that the plaintiff is not entitled to recover on its claim for such work and material."
This is difficult to understand. It appears to be a roundabout way of saying that if the notice of intention was filed as a result of the contract which Lieblich testified was entered into in the spring of 1951 and which Laurino denied was ever made, then the jury would be obliged to conclude that there was no contract made in October 1950 for filling and grading about the houses and that the respondent would not be entitled to recover for the same. This request is entirely lacking in clarity and the charging of it would serve only to confuse the jury. The trial court adequately charged that in order to recover for such work the respondent would have to establish that it entered into a contract with the appellant in October, 1950.
Finally, the appellant contends that certain comments and remarks of the trial court in the presence of the jury prejudiced its cause. We have examined and considered these, and are of the opinion that considered in the background of the entire trial, they had no serious effect upon the jury and that the appellant was not prejudiced thereby. It is noted that the court in its charge said:
"and if it may have appeared at times during the course of this trial that the Court was a bit harsh, I want to assure you and admonish you that there were no personal feelings in the mind of the Court."
and instructed them fully that their verdict was to be based solely on the evidence in the case and the law as stated in *568 the charge. Cf., Aywon Film Corp. v. Hatch, 2 N.J. Misc. 1108 (Sup. Ct. 1924).
From an examination of the entire record it does not appear that the substantial rights of the appellant were injuriously affected by the action of the court on the admission and exclusion of evidence and the instructions to the jury.
The judgment is affirmed.